Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ROSS II,<br><br>                              Plaintiff,<br><br>              v.<br><br>WAYFAIR, LLC,<br><br>                              Defendant. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

1.    Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon

information and belief as to all other matters, as follows.

**Nature of the Case**

2.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), New

York State Executive Law § 290, et seq.  Plaintiff seeks damages to redress the injuries

Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's

race and color (African American and Black) and terminated wrongfully terminated by

Plaintiff's employer.  Defendant also discriminated against Plaintiff by failing to promote

him.

**Jurisdiction and Venue**

3.  Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3).

4.  This Court has supplemental jurisdiction over Plaintiff's claims brought under state law

    pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), as it is a judicial

    district in the State (New York) in which the unlawful employment practices are alleged to

    have been committed.

**Procedural Prerequisites**

6.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal

    Employment Opportunity Commission ("EEOC").

7.  Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC.

8.  This Action is being commenced within ninety (90) days of receipt of this Notice.

**Parties**

9.  At all times material, Defendant Wayfair, LLC was a foreign limited liability company

    operating in the State of New York.

10. At all times material, Defendant was engaged in an industry affecting commerce within the

    meaning of 42 U.S.C. § 2000e.

11. At all times material, Defendant had 15 or more employees for each working day in each

    of 20 or more calendar weeks in the current or preceding calendar year.

12. At all times material, Defendant was Plaintiff's employer under Title VII.

13. At all times material, Defendant was Plaintiff's employer under the NYSHRL.

**Material Facts**

14. Plaintiff is an African American/Black male.

15. In or around June 2018, Plaintiff began working with Defendant as a Nesting Coach/Trainer based out of the corporate headquarters in Boston.

16. In this role, Plaintiff trained call center agents.

17. In or around July 2018 Plaintiff was assigned to a new facility in Big Flats, New York, where he trained the first class of call center agents.

18. On or around April 1, 2019 Plaintiff was promoted to Outbound Manager/Sales, taking on the responsibility to coach, manage, and train individuals on how to make sales sell via cold calling.

19. When that division was dismantled in or around September 2019, given his level of excellence, Plaintiff was kept on and transitioned to Inbound Sales in an L2 role.

20. In or around March 2020 Plaintiff's supervisory structure was changed insofar as he began reporting to Erik Powell, a manager at the L4 level.

21. In or around March 2020, Plaintiff and his team secured number 5 out of approximately 23 teams in revenue per full time equivalent.

22. Plaintiff was in the top five, or better, for all but one month thereafter.

23. From around September 2020 through around April 2021, Plaintiff was number one in revenue per FTE for all eight months in a row.

24. The one glitch in Plaintiff's near-perfect performance record is illustrative of his excellence.

25. In or around September 2020, Mr. Powell told Plaintiff (for the first time) that Plaintiff had a high amount of post-order adjustments, meaning discounts offered to customers—often after sales are made.

26.   Plaintiff learned thereafter through an organization-wide email (again for the first time) that Plaintiff had the second highest post order adjustments, behind a white colleague at the same level as Plaintiff.

27.   In the ensuing months, notwithstanding the near complete absence of guidance from his managers, Plaintiff took steps to correct these numbers, and by around January 2021 Plaintiff had almost completely resolved the issue.

28.   Mr. Powell never discussed the issue of post order adjustments with Plaintiff or attempted to coach Plaintiff on the issue of post order adjustments while Plaintiff reported to Mr. Powell.

29.   Plaintiff was in the top 3 for revenue for 6 out of 12 months and he was in the top three on close rate goal for 8 out of the 12 months.

30.   In January 2021 Plaintiff was assigned a new manager (Rick Martinkovic).

31.   Plaintiff's excellent job performance continued, and he captured number one and number two in close rate for January and February, leading Mr. Martinkovic to request that Plaintiff teach his peers how to accomplish the same remarkable results.

32.   Indeed, during an April 13, 2021 Zoom conference Plaintiff was lauded, recognized as a top sales manager, and given an award.

33.   At that time Plaintiff made it clear that he had serious ambitions within the company, including his desire to move a level up to a "L3."

34.   Plaintiff told Mr. Martinkovic that Plaintiff wanted to be promoted to L3.

35.   Plaintiff's ambitions were well known at the "L4" and "L5" level (one and two levels above the L3 position respectively), as Plaintiff attempted to position himself to move from sales to individuals to sales to institutions.

36. Such a move would have put Plaintiff in the L3 category, opening up greater responsibilities and professional growth.

37. On or about April 20, 2021—just after telling Mr. Martinkovic about his ambitions and only days after being lauded during the Zoom managers' meeting—Plaintiff was summarily terminated.

38. Upon information and belief, Defendant fired Plaintiff because Plaintiff expressed interested in a promotion.

39. Indeed, Defendant has a race problem when it comes to is managers at the L3 level and higher.

40. Upon information and belief, at the time of Plaintiff's termination, less than 1% of Defendant's leadership at the L3 level or higher was African American.

41. At the same time, upon information and belief, approximately 79% of this cohort was Caucasian.

42. Meanwhile, upon information and belief, approximately 15% of the blue-collar workers at Defendant were African American.

43. Upon information and belief, according to internal data shared with Wayfair employees in March 2019, Wayfair's leadership team at the time was 79% white, and just 3% of the team identified as Hispanic or Latino.

44. Upon information and belief, according to this data, one percent identified as Black or African American, 2% identified as two or more races, and 15% identified as Asian.

45. Upon information and belief, Caucasians were hired and/or promoted to L3 positions at higher rates than African American/Black candidates.

46. Upon information and belief, Defendant's promotion practices have caused the exclusion of applications for promotion and/or hire to L3 or higher positions because they are African American.

47. Upon information and belief, Defendant's promoting and/or hiring practices have a disparate impact on African American applicants to L3 or higher positions.

48. Upon information and belief, Caucasians were hired and/or promoted to L3 positions at higher rates than African American candidates with a statistically significant disparity of two standard deviations.

49. If Plaintiff was white, he would not have been terminated from employment and/or would have been promoted.

50. Plaintiff excelled at every level from training to outbound sales and inside sales.

51. Defendant could not accept an African American/Black person who made it all look too easy, nor the way Plaintiff breathed confidence into his agents and peers.

52. Less discriminatory alternatives existed to achieve Defendant's business purposes.

53. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful termination and failure to promote.

54. The above are just some of the ways Defendant regularly and continually harassed and discriminated against Plaintiff while employing Plaintiff.

55. Defendant treated Plaintiff this way due to Plaintiff's race/color.

56. Defendant failed to promote Plaintiff because of his race/color.

57. Defendant terminated Plaintiff because of his race/color.

58. Defendant acted intentionally and intended to harm Plaintiff.

59. Defendant unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

60. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendant.

61. Plaintiff was qualified for his position.

62. Plaintiff was qualified for the L3 position.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

64. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

65. Defendant acted maliciously, willfully, outrageously, and with full knowledge of the law.

66. As such, Plaintiff demands punitive damages as against all Defendant, jointly and severally.

**First Cause of Action for Discrimination (Unlawful Termination)**
**Under Title VII**

67. Plaintiff restates the foregoing allegations.

68. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

69. Defendant violated the section(s) cited herein as set forth.

70. Defendant violated the section(s) cited by terminating Plaintiff because Plaintiff expressed interest in a promotion.

71. Defendant violated the section(s) cited by terminating Plaintiff because Plaintiff expressed interest in a promotion because Plaintiff is African American/Black.

**Second Cause of Action for Discrimination (Failure to Promote)**
**Under Title VII**

72. Plaintiff restates the foregoing allegations.

73. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

74. Defendant violated the section(s) cited herein as set forth.

75. Defendant violated the sections by failing to promote Plaintiff.

**Third Cause of Action for Discrimination (Disparate Impact)**
**Under Title VII**

76. Plaintiff restates the foregoing allegations.

77.   Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled

"employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

78.   Defendant violated the section(s) cited herein as set forth.

79.   Defendant violated the sections by failing to promote Plaintiff.

**Fourth Cause of Action for Discrimination (Unlawful Termination)
Under the New York State Executive Law**

80.   Plaintiff restates the foregoing allegations.

81.   New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

82.   Defendant violated the section cited herein as set forth.

**Fifth Cause of Action for Discrimination (Failure to Promote)
Under the New York State Executive Law**

83.   Plaintiff restates the foregoing allegations.

84.   New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

85. Defendant violated the section cited herein as set forth.

### Sixth Cause of Action for Discrimination (Disparate Impact) Under the New York State Executive Law

86. Plaintiff restates the foregoing allegations.

87. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

88. Defendant violated the section cited herein as set forth.

### Jury Demand

89. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

    A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., and the New York State Human Rights Law, New York State Executive Law § 290, et seq., in that Defendant discriminated against Plaintiff based on Plaintiff's race/color, wrongfully terminated Plaintiff, and wrongfully failed to promote Plaintiff;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices and conduct.

Dated:  Rhinebeck, New York
August 31, 2022

_____
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com